## PACK v. WINES et ux.

No. 2590.   Decided April 30, 1914 (141 Pac. 105).

CONTRACTS—PERFORMANCE—EVIDENCE—SUFFICIENCY. Evidence, in an action by an architect for the value of certain building plans for which he was to be paid, if they were satisfactory, *held* to show that the plans proved too expensive, and were never used, defeating recovery.

McCARTY, C. J., dissenting.

APPEAL from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by William Pack against Ira D. Wines and wife.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*Evans, Evans and Folland* for appellant.

*C. S. Patterson* for respondent.

FRICK, J.

The plaintiff is an architect. He sued the defendants to recover the reasonable value of certain plans and specifications which he alleged he furnished them. The plaintiff de-

clared and relied on an express contract respecting his right to recover, but not with respect to the amount to which he alleged he was entitled. The court found the terms of the contract entered into between the parties to be precisely as testified to by the plaintiff, which was as follows:

"Mrs. Wines [one of the defendants] said, 'We are going to build a house, Mr. Pack, and we want to see if you can't get us up some plans.' They told me like this: To go ahead and get up the plans and specifications, with the understanding that, if I furnished the plans and could give them a bid that was satisfactory, I was to furnish the plans for nothing, furnish them with the contract; that, in case they accepted somebody else's bid, they were to allow me for those plans; they were going to pay me for getting them up."

Upon that subject the plaintiff also testified:

"I told them, 'Now, in case you folks accept my bid, why, the plans won't cost you anything; but,' I said, 'if you get other contractors to bid, and you accept their bid, why then, of course, I would expect you to pay me what you would have to pay some other architect down town.'"

The court further found that plaintiff did prepare plans and specifications for a dwelling house; that the estimated cost of the dwelling proposed by said plans was $14,600; that the plans were rejected by the defendant Wines because the cost was excessive, and that the defendant Wines then informed the plaintiff that he did not propose to expend more than $10,000 for a dwelling; that the plaintiff then changed the plans so as to reduce the cost and offered to build the dwelling for $12,200, and again changed them to further reduce the cost and offered to build the house for $11,500, with a garage, but neither offer was accepted, and the plans were rejected by the defendants as unsatisfactory; that the plaintiff offered to erect a dwelling according to said last plans for $11,500, and no less, but said offer was also rejected; that no bid by any one else was either solicited or made to erect a dwelling for the defendants in accordance with said plans or otherwise, and no dwelling was erected. The foregoing substantially covers the facts found, and as

conclusions of law the court found that the plaintiff had declared upon an express contract by the terms of which he was to prepare certain plans and specifications for which he was to receive the reasonable value thereof in case such plans were satisfactory to the defendants, and that, in view that plaintiff had not furnished plans that were satisfactory, he could not recover. Judgment was therefore entered in favor of defendants.

We are of the opinion that the findings, conclusions of law, and judgment are right. There is no claim made that the defendants did not act in the best of faith both in arranging for the plans and in rejecting them because unsatisfactory for the reason that the dwelling, according to those plans, was too expensive. Nor is it contended that the plans were used in any way by the defendants. It is, however, insited by the plaintiff that the plans were obtained by the defendants because they intended to erect a dwelling, and that the plans in question were furnished them for that purpose, and hence they should pay the reasonable value thereof. No doubt the defendants desired and expected to build a dwelling, and ordered the plans with that end in view; but, according to the plaintiff's own statements, they were to pay for them only if he "could give them a bid that was satisfactory." There was therefore an express condition imposed to the effect that, unless plaintiff could make a bid for the erection of the dwelling which was satisfactory to the defendants, he should receive no pay. It is thus of little, if any, consequence that the plans, as such, may have been satisfactory. While that fact is an element as a matter of course, yet it was not the only condition that plaintiff was bound to comply with before he can recover in this action. Before he can recover he must prove that in connection with the plans he also made or furnished a bid for the erection of the dwelling which, as to its cost, was satisfactory to the defendants, and this is so regardless of whether the defendants in the first instance said anything at all about the amount of a bid that would be satisfactory. According to plaintiff's own statements, he agreed to the condition that he should

receive no pay, unless he furnished a satisfactory bid for the erection of the dwelling specified in the plans, and then only by way of profits derived from being awarded the contract to construct the dwelling. He, however, now wants to recover upon the sole ground that he furnished plans that were not disapproved, hence must be deemed satisfactory. To permit a recovery upon this view would be to allow a recovery by a plaintiff upon a contract he had not performed according to his own statements. This a court may not do. The alleged fact that the plans were delivered to the defendants is quite immaterial. Had the plaintiff alleged and proved that he had demanded those plans from the defendants, and that they had refused to return them to him, or if he had alleged and proved that the defendants had used the plans for their own benefit, he might stand in a different position before the court. As the matter now stands, however, the plaintiff is bound by the terms of his own contract. Those terms, according to his own statements, have not been breached by the defendants, and hence he has no cause of action against them, or either of them.

The judgment is therefore affirmed, with costs.

STRAUP, J. (concurring).

The conditions under which the plaintiff was to receive compensation for plans to be prepared by him were testified to by himself, and by him alone. As shown by his testimony and the findings, if he furnished plans and made a satisfactory bid, and one which was accepted by the defendants, then was he to receive nothing for the plans. If the bid of another was accepted, then was he to be paid. We thus have a contract by the terms of which conditions are specified under which the plaintiff was to receive no compensation for preparing and furnishing plans, and another under which he was to be paid. Neither existed. Plaintiff's bid was not satisfactory, and was not accepted, nor was the bid of another accepted, or even solicited. Admittedly the plaintiff was not entitled to recover under the provision of

the contract that the bid of another was accepted—the only condition specified in the contract under which he was entitled to be paid. And had he made a bid which was satisfactory and acceptable to the defendants, then also was he not entitled to be paid anything for preparing and furnishing plans. He very positively and directly testified to that. But since he made a bid which was not satisfactory and not acceptable to the defendants, therefore he asserts he now is entitled to be paid. But that is not his contract. No such condition is specified or embraced within it. When the parties, as here, made a contract specifying conditions under which the plaintiff was to receive no compensation, and conditions under which he was to be paid, to now permit him to recover on other conditions not specified is to make another contract for them, or to permit a recovery on an implied contract. I think we may do neither. Further, as testified to by the plaintiff himself:

"The first plan was estimated to cost $12,200, which, after changes, was more expensive, about $14,600. Mr. Wines said that was more money than he wanted to put into a home; that he did not want to pay more than $10,000. So they decided to go back to the first plan. They suggested other changes in location of the fireplace and stairway. I went to work and completed the third set to their instructions."

This, I think, indicates that, while nothing was said when plans were first requested as to the cost of the building the defendants desired to build—and the plaintiff also so testified—yet, before the plans were finally completed and furnished, the defendants nevertheless had indicated to him that they "did not want to pay more than $10,000." But confessedly the lowest bid made by the plaintiff on any of the plans prepared and furnished by him was $11,500. No plans to construct a home at a cost not to exceed $10,000 were prepared or furnished. The court so found. The evidence, I think, supports the finding. So for that reason also do I think the plaintiff is not entitled to recover. 6 Cyc. 31.

McCARTY, C. J.

I dissent. The court found, and the evidence shows, that respondents informed appellant that "they were contemplating the construction of a residence on property then recently purchased by the defendant Ira D. Wines, and that Mrs. Wines said to him, *We are going to build a home, Mr. Pack, and we want to see if you can't get us up some plans.'* " This statement made by Mrs. Wines, speaking for herself and Mr. Wines, and in the presence of Mr. Wines, was positive and unconditional. Appellant, therefore, was assured by respondents at the very threshold of the negotiations regarding the subject-matter of the action, and he was justified in acting on the assurance, that they had fully decided to and would build the home about which they were consulting him. The only evidence in the case is the testimony of appellant and certain documentary evidence introduced by him. He testified that in answer to the foregoing statement of Mrs. Wines he said, "All right." He further testified:

"I went to work making sketches, several of which I made, and finally they decided on one, a lead pencil sketch, and they instructed me to go ahead with it. They told me . . . to go ahead and get up the plans and specifications, with the understanding that, if I furnished the plans and could give them a bid that was satisfactory, why I was to furnish the plans for nothing, furnish them with the contract; that in case they accepted somebody else's bid, they were to allow me for these plans. They were to pay me for getting them up. . . . They told me they had been through the Covey houses on First South (this city), and they wanted me to go there and look them over. Mrs. Wines says, 'That is about the house we want;' and she says, 'We would like something as near like those houses as you can get.' "

These were the only instructions respondents gave appellant respecting the style and architecture of the home they had in mind. Nothing was said by either of the respondents about limiting the cost of the house to any specified amount. Appellant prepared three sets of plans. The estimated cost

of the building constructed according to the plans first pre-
pared and submitted to respondents was $12,200. No objec-
tion was made to the plans because the house as planned
would be too expensive. In fact no comment respecting the
cost of the proposed building was made by respondents, or
either of them. Appellant, however, at the request of re-
spondents, made certain changes in the plans. The plans,
as changed, increased the cost of the proposed structure to
$14,600. When the plans as thus changed were submitted
to respondents, Mr. Wines said that was more money than
he wanted to "put into a home;" that he did not "have in
mind anything more than $10,000." They finally "decided
to go back" to the plans first prepared and submitted. Ap-
pellant, again at the request of respondents, made certain
changes in the first set of plans. These changes, however,
neither increased nor reduced the estimated cost ($12,200)
of the proposed house. When this, the third set of plans
so-called, was submitted to respondents, they expressed them-
selves as being entirely satisfied.

Appellant further testified:

"I made a set of blueprints of the completed plans and
delivered them to their house, No. 280 H street. In May
Mr. and Mrs. Wines went East and instructed me to have
the specifications and so forth ready when they returned in
June."

Soon thereafter appellant received from Mrs. Wines the
following letter:

"Ogden, Utah. May 7, 1910.

"Mr. Pack: Mr. Wines and I neglected to call you before
we left. I am writing this on train. Hope you can read it.
We will be away until June 1st. Will you have stone looked
up and specifications and so forth ready? Also see if you
can locate the same brick the Covey houses are made of. We
did not see such brick. Yours very truly, Mrs. I. D. Wines."

Soon after respondents returned home from the East Mr.
Wines wrote appellant as follows:

44 Utah 28

"Salt Lake City, Utah, June 9, 1910.

"W. E. Pack—Dear Sir: Owing to the unsettled outlook in the money market, I will be compelled to postpone the building of the house for a while, just how long I cannot say at present. Business calls me to Nevada for a while, and it may be possible that I will be ready to proceed as soon as I return. Hope so at least. Assure you that whenever I build you shall have the contract. I am very sorry it has got into this shape, as you have been to so much trouble with plans and so forth, but trust it will all come out right in the end. Yours very truly, Ira D. Wines."

Matters drifted along, and nothing definite was said or done for nearly a year. Again quoting from appellant's testimony:

"In May, 1911, I called up, and Mrs. Wines said, 'We would like to have you come up to the house, Mr. Pack.' I went up that evening. They talked over the building, and Mrs. Wines said: 'Well, now, what do you think, Mr. Wines? Don't you think we are ready for Mr. Pack to go ahead with the building?' He said, 'I don't know,' and spoke of business matters that would hinder him from going ahead with the building, but would let me know in a few days."

He also further testified:

"I made a bid of $12,200. Later I made a bid of $11,500, when material and labor were cheaper to build his house and garage. Mr. Wines did not object to the bid of $12,200. He did not say it was too high, or that he would not go ahead, or anything about it."

In June, 1911, appellant asked respondents if they would not advance him a "little money" for the trouble he had been to preparing the plans, and Mrs. Wines said, "Why, certainly; we expect to pay you." Again quoting from appellant's testimony:

"I let it go for possibly a month longer and then wrote to Mr. Wines, asking him to advance me $100. . . . I got no reply. I waited a week and wrote him another let-

ter, and got no reply. I wrote him a third letter, and received no reply."

The errors assigned are: (1) The refusal of the court to find that defendants "employed the plaintiff to draw up plans" for the house which they had decided to construct; that the plaintiff was to receive compensation for his services at all events; that, if the contract were let to the plaintiff, his bid should include the work of getting up the plans; if the contract were let to a third party, the plaintiff should receive a reasonable compensation for drawing up the plans. (2) That the court erred in finding as a conclusion of law "that . . . plaintiff was to receive pay only in the event that his plans were used by the contractor on the erection of the building, or possibly in the event that the plaintiff would offer to erect the building from such satisfactory plans for the sum of $10,000, and such offer should be rejected by defendants; otherwise the plaintiff to receive nothing for his services."

I think the assignments of error are well taken, and that the judgment should be reversed. The evidence, as the record now stands, shows that appellant, at the request of respondents, prepared plans for a house patterned after a house referred to in the bill of exceptions as the "Covey" house. The first set of plans submitted to respondents represented a building that would cost $12,200. No objection was made to these plans because the estimated cost of the building was too high. Certain changes, however, were made in the plans at the suggestion of respondents. The changes thus made increased the estimated cost of the house to $14,600. When this, the second set of plans, was submitted to respondents, Mr. Wines remarked that he did not have "in mind anything more than $10,000," saying, "I have had in mind that I did not want to go more than $10,-000." That was the first time, in fact it was the only occasion during the entire transaction, which extended over a year, that Mr. Wines suggested that he desired to limit the cost of the house to $10,000. It was only a suggestion, because, as hereinbefore stated, the evidence shows that:

"They decided to go back to the first plans. They . . . suggested changes, etc. . . . Mrs. Wines said, 'I guess that is everything, isn't it, Mr. Wines?' . . . He said: 'I think so. I don't know of anything we want to change more than that. I am satisfied, if you are.' She said, 'Mr. Pack can go ahead and get up the plans;' and he said, 'That suits me.' . . . I went to work and completed the third set according to their instructions . . . I made a set of blueprints of the completed plans and delivered them to their house."

I have read and reread the evidence as contained in the bill of exceptions, and am unable to find a suggestion or even a hint therein to the effect that the plans were not entirely satisfactory. But, on the contrary, there is much evidence showing affirmatively that the plans were satisfactory. It seems that much importance it attached to the statement made by Mr. Wines that he did not have "in mind" a house that would cost more than $10,000. This statement, made, as it was, after the second set of plans was completed, and the same submitted to respondents, did not change the contractual relations of the parties. To give the statement the effect now claimed for it would be injecting an unreasonable and absurd condition into the contract, namely: That Mr. Wines had the legal right to insist that appellant, or some other contractor, make him a bid to build a house costing $12,200 for the sum of $10,000. For illustration, suppose that, when the second set of plans was submitted to respondents, they had declined to further proceed in the matter, and had abandoned their intention of building a house. I take it that no lawyer would contend that Mr. Wines could have avoided the obligation he would have been under to pay for the plans by announcing for the first time that he had "in mind" the erection of a $14,600 structure for $10,000. And yet this is the import of what he said, if the statement is to be given the force and effect now claimed for it by respondents. Counsel for respondents, in his printed brief, says:

"Appellant at least at that time learned that the cost of the house *must not exceed* $10,000, *and, accepting that limitation,* he prepared the third set of plans."

The trial court also seems to have arrived at the same conclusion. That part of counsel's statement which I have italicized is not only unsupported by any evidence, but is contrary to the most positive and conclusive kind of evidence. Moreover, more than a year after the third set of plans was submitted to, approved, and accepted by respondents, appellant requested them to make him a partial payment on the plans. Mrs. Wines said, "Why, certainly; we expect to pay you." The evidence, as I read the record, not only shows that the plans were entirely satisfactory to respondents, but also shows, as clearly as evidence can show, that appellant's bid of $12,200 was satisfactory, but was not accepted because of the "unsettled outlook in the money market." After the plans showing that the cost of the house would be $12,200 were delivered to and accepted by respondents, Mr. Wines wrote to appellant, assuring him that "whenever I build you shall have the contract." This statement of Mr. Wines shows that he was satisfied with appellant's bid, but, "owing to the unsettled outlook in the money market," he was "compelled to postpone the building of the house."